## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. |
| ARCLIGHT ENERGY PARTNERS FUND VI, L.P., | ) |
| GULF OIL L.P., | ) |
| and | ) |
| CUMBERLAND FARMS, INC., | ) |
| Defendants. | ) |

## COMPLAINT

The Commonwealth of Pennsylvania, by and through the Office of Attorney General, ("Plaintiff") for its complaint herein alleges:

### I.   NATURE OF THE COMPLAINT

1. Plaintiff brings this civil antitrust action to challenge the merger of two of the largest providers of gasoline terminaling services and distillates terminaling services in the Commonwealth of Pennsylvania. Plaintiff alleges that

the proposed acquisition of Gulf Oil L.P. ("Gulf") by ArcLight Energy Partners Fund VI, L.P. ("ArcLight") from Cumberland Farms, Inc. ("Cumberland Farms") would substantially lessen competition in three markets in the Commonwealth in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18 and in violation of Plaintiff's applicable state common law.

2. Plaintiff seeks permanent injunctive relief to prevent, restrain and/or remedy the adverse effects on competition and consequent harm to the public interest that would result from ArcLight's acquisition of Gulf.

## II.   PARTIES, JURISDICTION AND VENUE

3. Plaintiff is a sovereign state of the United States. This action is filed on behalf of the Plaintiff, by its Office of Attorney General, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26. Plaintiff brings this action in its sovereign capacity and as parens patriae on behalf of its citizens, general welfare and economy of the Commonwealth of Pennsylvania to prevent and restrain ArcLight, Gulf and Cumberland Farms from violating Section 7 of the Clayton Act, 15 U.S.C. § 18, and Pennsylvania common law pursuant to 71 P.S. § 732-204 (c).

4. Defendant ArcLight is a limited partnership organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its corporate office and principal place of business located at 200 Clarendon Street, 55th Floor, Boston, Massachusetts 02117. ArcLight, among other things, is

engaged in the sale and provision of gasoline terminaling services and distillates terminaling services in the Commonwealth of Pennsylvania.

5.      ArcLight owns and operates 12 refined petroleum products storage terminal facilities in the Commonwealth of Pennsylvania totaling 9 million barrels of storage capacity through its Penn Products Terminals unit.

6.      ArcLight is, and at all relevant times has been, engaged in "commerce" as defined in Section 1 of the Clayton Act, 15 U.S.C. § 12.

7.      Defendant Gulf is a limited partnership organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its corporate office and principal place of business located at 100 Crossing Boulevard, Framingham, Massachusetts 01702.  Gulf is a subsidiary of Defendant Cumberland Farms, a Delaware corporation headquartered in Framingham, MA.  Gulf, among other things, is engaged in the sale and provision of gasoline terminaling services and distillates terminaling services in the Commonwealth of Pennsylvania.

8.      Gulf owns and operates 12 terminals, seven of which are located in the Commonwealth of Pennsylvania.

9.      Both Gulf and Cumberland Farms are, and at all relevant times have been, engaged in "commerce" as defined in Section 1 of the Clayton Act, 15 U.S.C. § 12.

10. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 1337 (a).

11. Defendants have consented to venue and personal jurisdiction in this District. Therefore, venue in this District is proper under Section 12 of the Clayton Act, 15 U.S.C. §22, and 28 U.S.C. §1391 (b) and (c).

### III.   PROPOSED ACQUISITION

12. Pursuant to a purchase and sale agreement dated May 15, 2015, ArcLight, through its wholly-owned subsidiaries Chelsea Petroleum Products I, LLC and Blue Hills Fuels, Inc., proposes to purchase 100% of the partnership interests in Gulf from Cumberland Farms (the "Proposed Acquisition").

### IV.   TRADE AND COMMERCE

#### Relevant Product Markets

13. The relevant lines of commerce in which to analyze the effects of the Proposed Acquisition are gasoline terminaling services and distillates terminaling services.

14. Terminals generally consist of several storage tanks and loading racks that pump fuels into tanker trucks for further delivery. Terminals are specialized facilities connected to one or more fuel supply sources, have the capacity to store fuel shipments, and must be configured properly to distribute the fuel to customers. Light petroleum products terminals are specialized facilities that receive gasoline,

diesel fuel, heating oil, kerosene, and jet fuel, among other products, by pipeline, by water, by rail, or directly from refinery production. These products are stored or redistributed by pipeline, water, rail, or truck. Terminals are critical to the sale and distribution of transportation fuels.

15.  Terminaling services consist of a cluster of services related to the bulk receipt, storage, and throughput of petroleum products. Terminals also perform value-added services, such as handling and injection of motor fuel additives (including ethanol) as petroleum products are redelivered across the truck rack.

16.  Only terminals with vapor recovery equipment, internal floating roofs, and specialized environmental and safety permits can store gasoline. However, tanks configured and permitted to store gasoline can always store distillates. Thus terminals that store gasoline compete in both the gasoline terminaling services and distillates terminaling services markets. Terminals that store only distillates compete only in the distillates terminaling services market.

17.  Transporting bulk quantities of light petroleum products by pipeline to terminals is significantly less expensive on a per gallon basis than trucking light petroleum products the same distance.

18.  There is no cost-effective substitute for terminals and the services they provide. Trucking is not an economical alternative due to the high costs associated

with trucking light petroleum products long distances from refineries to retail locations and end-use customers.

## Relevant Geographic Markets

19. There are three relevant geographic markets in Pennsylvania in which to analyze the effects of the Proposed Acquisition on terminaling services are Altoona, Harrisburg, and Scranton.

20. The Altoona market includes the area serviced by the Gulf's terminal located in Altoona and ArcLight's terminal located in Altoona.

21. The Harrisburg market includes the area serviced by Gulf's two terminals located in Mechanicsburg and Williamsport, and ArcLight's four terminals located in Harrisburg, Highspire, Mechanicsburg, and Northumberland.

22. The Scranton market includes the area serviced by Gulf's terminal located in Pittston Township and ArcLight's terminal located in Pittston Township.

## V.   ENTRY CONDITIONS

23. Entry into the relevant markets would not be timely, likely, or sufficient to prevent or defeat the anticompetitive effects of the Proposed Acquisition.

24. Entry into the relevant markets is costly, difficult, and unlikely because of, among other things, the difficulty of obtaining regulatory approvals and the presence of excess terminal capacity in each market.  A new entrant would

be unlikely to invest in a new terminal, with substantial sunk costs, in these markets which already have sufficient capacity.

## VI. EFFECTS OF THE PROPOSED ACQUISITION

25. The effects of the Proposed Acquisition, if consummated, may be substantially to lessen competition and to tend to create a monopoly in the relevant markets in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, and Pennsylvania common law in the following ways, among others:

   a. by eliminating actual, direct, and substantial competition between both Defendants;

   b. by increasing the likelihood that Defendants would unilaterally exercise market power in the relevant markets; and

   c. by enhancing the likelihood of collusion or coordinated interaction between or among the remaining firms in the relevant markets.

## VII. VIOLATIONS

### Count I

26. Plaintiff repeats and realleges every preceding allegation as if fully set forth herein.

27. The transactions described in Paragraph 12 above, if consummated, would substantially lessen competition in the relevant markets in violation of Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## Count II

28. Plaintiff repeats and realleges every preceding allegation as if fully set forth herein.

29. The transactions described in Paragraph 12 above, if consummated, would substantially lessen competition in the relevant markets in violation of Pennsylvania common law doctrine against monopolies and restraints of trade.

## VIII.  REQUESTED RELIEF

Accordingly, Plaintiff requests this Court:

A.  Adjudicate that the Proposed Acquisition violates Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18, and Pennsylvania common law;

B.  Preliminarily and permanently enjoin ArcLight from acquiring Gulf or from combining its own and Gulf's assets and operations in any other manner;

C.  Award Plaintiff its reasonable costs and attorneys' fees; and

D.  Award such other relief as the Court may deem just and proper.

        Respectfully submitted,

        COMMONWEALTH OF PENNSYLVANIA
        OFFICE OF ATTORNEY GENERAL

        Bruce R. Beemer
        First Deputy Attorney General

        Tracy W. Wertz
        Chief Deputy Attorney General
        Antitrust Section

By:   <u>/s/ *Joseph S. Betsko*</u>
Joseph S. Betsko
Senior Deputy Attorney General
PA Bar #82620

Norman W. Marden
Deputy Attorney General
PA Bar #203423
Office of Attorney General
Antitrust Section
14th Floor, Strawberry Square
Harrisburg, PA  17120
(717) 787-4530
(717) 705-7110 (fax)

Attorneys for the Commonwealth of Pennsylvania